United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 24, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 21-32307 |
| GARY RUSSELL HAYMOND, | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | CHAPTER 7 |

### MEMORANDUM OPINION

Triple 7 Capital, LLC asks this Court to summarily find in its favor and enter an order of relief against Gary Russell Haymond in this involuntary chapter 7 where the only statutory predicates under 11 U.S.C. § 303 remaining for trial are whether Triple 7 Capital, LLC's claim is contingent, whether it is subject to a bona fide dispute as to liability or amount, and whether an order of relief should be entered pursuant to § 303(h).  On February 7, 2022, the Court held a hearing and took the matter under advisement.  As detailed below, this Court summarily finds that Triple 7 Capital, LLC's claim is not contingent.  Accordingly, summary judgment will be granted as to that matter.  Genuine disputes of material fact remain regarding whether Triple 7 Capital, LLC's claim is subject to a bona fide dispute as to liability or amount, and whether an order of relief should be entered pursuant to § 303(h).  Accordingly, summary judgment as to those matters is denied.

### I.  BACKGROUND

1. On June 6, 2016, South Texas Innovations, d/b/a STI, LLC ("*STI*") executed a promissory note ("*Note*") to Triple 7 Capital, LLC ("*Triple 7*" or "*Petitioning Creditor*") in the amount of $995,752 with a maturity date of December 1, 2016.[1]  The Note was signed by "South Texas Innovations, LLC, ('*STI*') Gary Haymond" as Borrower.[2]

2. By December 1, 2016, the Note was not paid.[3]

---

[1] ECF No. 35-1 at 8.
[2] *Id.*
[3] *Id.* at 3, ¶ 4.

3. On March 3, 2017, and after STI defaulted, Triple 7's managing member, Robbie Hass ("*Hass*") contacted Gary Russell Haymond ("*Haymond*" or "*Alleged Debtor*") several times to demand payment and to discuss a potential plan for repayment.[4]  As discussions continued, STI made two payments—on April 4, 2017 in the amount of $106,435.15, and on May 1, 2017 in the amount of $97,354.[5]

4. By May 31, 2017, Hass and Haymond still had not reached an acceptable repayment plan, and Hass threatened suit.[6]  In response, Haymond e-mailed Hass stating that his lawyer had drawn up a document that gave Hass security and told Hass to make modifications to it if he did not like it.[7] Haymond stated that he could not stop Hass from suing him but threatened that a suit "puts [Hass] well behind other people who [are] after STI for debt collection."[8]

5. On June 21, 2017, STI negotiated an extension of the maturity date of the Note to March 15, 2018 ("*Security Agreement*").[9]

6. The Security Agreement contained the following language:

> THIS SECURITY AGREEMENT (this "Agreement"), dated as of this 20th day of June, is made by and between **Gary Haymond, individually, as guarantor for the Note described below**, and as President of South Texas Innovations, LLC, a Texas Limited Liability Company and as President of Garyrent Properties, LLC (collectively the "*Debtor*"), with an address at 1617 Peach Leaf St., Houston, Texas and Triple 7 Capital LLC (the "Secured Party"), with an address at 9003 Meadow Vista Blvd, Houston, TX 77064-2007.
>
> . . .
>
> (c) "Note" means that certain Promissory Note, dated as of the date hereof, made by Debtor, for the benefit of Secured Party, in the original principal amount of $ 995,792.00 and a maturity date of December 1, 2016. As of the date of this Agreement, $203,789.15 of the original Note amount was repaid on May 15, 2017.[10]

7. Under the Security Agreement, "Debtor" agreed to repay $400,000 on or before September 15, 2017, and the remainder by March 15, 2018.[11]

---

[4] *Id.* at 15-16.
[5] *Id.* at 3, ¶ 6, 18, 20.
[6] *Id.* at 3, ¶ 9, 22-24.
[7] *Id.* at 4, ¶ 10; 26-29.
[8] *Id.* at 26.
[9] *Id.* at 44-49.
[10] *Id.* at 44 (emphasis altered).
[11] *Id.* at 45.

8. The Security Agreement also provided that "Debtor" would be in default under the Security Agreement if, among other things, "Debtor" failed to pay the $400,000 by September 15, 2017, and/or failed to repay the Note in full by March 15, 2017.[12] Upon default, Triple 7 could declare all obligations immediately due and payable and exercise any remedies under the Security Agreement or under applicable law.[13]

9. On October 12, 2017, Triple 7 sent a demand letter purporting to accelerate the debt due under the Note because the payment of $400,000.00 was not made on or before September 15, 2017.[14]

10. On November 17, 2017, Triple 7 filed suit against STI, Garyrent Properties LLC, and Haymond in Montgomery County, Texas ("*State Suit*").[15]

11. On August 3, 2018, three petitioning creditors filed an involuntary petition under chapter 7 of the Bankruptcy Code against STI in a case styled *In re South Texas Innovations, LLC*, Case No. 18-34245, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("*STI BK*").[16] On October 30, 2018, an order for relief under chapter 11 was entered, converting the case to a case under chapter 11 of the Bankruptcy Code.[17]

12. On March 11, 2019, Triple 7 filed its secured Proof of Claim No. 34 in the STI BK, based on the Note and Security Agreement. The claim was for $1,460,957.29 and asserted a secured portion of only $1.00.[18]

13. On July 7, 2021, Triple 7 filed the instant involuntary petition ("*Involuntary Petition*") against Haymond.[19] In the Involuntary Petition, Triple 7 asserted a claim for $1,690,359 ("*Claim*").[20]

14. On July 10, 2021, Haymond filed a "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and Alternatively, to be Treated as a Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 12(d) and 56(a)" ("*Motion to Dismiss*").[21]

15. On September 13, 2021, the Court held a hearing on the Motion to Dismiss.[22]

16. On September 28, 2021, the Court issued its Memorandum Opinion and accompanying Order denying the Motion to Dismiss.[23]

17. On October 12, 2021, Alleged Debtor filed "Gary Russell Haymond's Original Answer to

---

[12] *Id.* at 46.
[13] *Id.*
[14] *Id.* at 6, ¶ 19.
[15] ECF No. 18-16.
[16] 18-34245, ECF No. 1.
[17] 18-34245, ECF No. 29.
[18] 18-34245, Claim No. 34.
[19] ECF No. 1.
[20] *Id.* at 6, ¶ 23, 71.
[21] ECF No. 6.
[22] ECF No. 20.
[23] ECF Nos. 21, 22.

Involuntary Petition" ("*Answer*").[24]

18. On November 24, 2021, Triple 7 filed the instant motion for summary judgment ("*Motion for Summary Judgment*") and accompanying supplement.[25]

19. On December 23, 2021, Haymond filed his response ("*Response*").[26]

20. On January 13, 2022, Triple 7 filed its "Reply in Support of Its Motion for Summary Judgment" ("*Reply*").[27]

21. On February 7, 2022, the Court held a hearing on the Motion for Summary Judgment and, at the conclusion, took the matter under advisement ("*Hearing*").

## II.    JURISDICTION AND VENUE

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[28] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), the instant motion contains core matters because the motion seeks relief under the United States Bankruptcy Code. Further, this is the type of proceeding that can only arise in the context of a bankruptcy case.[29] There is no state law equivalent for an involuntary bankruptcy petition. Finally, this Court may only hear a case in which venue is proper.[30] Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Here, venue is proper because over

---

[24] ECF No. 25.

[25] ECF Nos. 35, 36.

[26] ECF No. 37.

[27] ECF No. 53.

[28] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[29] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

[30] 28 U.S.C. § 1408.

the last 180 days before the filing of this Involuntary Petition, Alleged Debtor resided, had the principal place of business, or had principal assets located in this district longer than in any other district.[31]

### III.   ANALYSIS

#### A.  Federal Rule 56(c)

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32]  A genuine dispute of material fact exists if the fact at issue could affect the outcome of the case and based on the evidence, a reasonable jury could return a verdict for the non-moving party.[33]  A movant asserting that a fact cannot be genuinely disputed must cite to particular parts of material in the record evidencing that no genuine dispute is present, or show that an adverse party cannot produce admissible evidence to support that fact.[34]  While the Court may consider other materials in the record, it need only consider those actually cited.[35]

In a motion for summary judgment, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."[36] Where the nonmoving party has the burden of proof at trial, the movant must show the court that the nonmoving party lacks evidence of one or more material elements of its case.[37]  This does not require the movant to negate the elements of the nonmovant's case—demonstrating the absence

---

[31] *See* ECF No. 1 (Allegation was made by checking a box in paragraph 10).

[32] FED. R. CIV. P. 56(a); *see Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990) (citing *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989)).

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[34] *Prescott v. Wells Fargo Bank, N.A. (In re Prescott)*, 607 B.R. 288, 294 (Bankr. S.D. Tex. 2019) (citing FED. R. CIV. P. 56(c)(1)).

[35] *Id.* (citing FED. R. CIV. P. 56(c)(3)).

[36] *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

[37] *See Celotex Corp.*, 477 U.S. at 325.

of evidence suffices.[38]  If the movant fails to meet this burden, the summary judgment motion must

be denied.[39]  Conversely, if the movant succeeds in showing a lack of evidence, then the nonmov-

ing party "must identify specific evidence in the summary judgment record demonstrating that

there is a material fact issue concerning the essential elements of its case for which it will bear the

burden of proof at trial."[40]  A court is not to weigh evidence, assess its probative value, or resolve

factual disputes, but it must construe the evidence in the light most favorable to the nonmoving

party.[41]

### B.  Whether Petitioning Creditor is entitled to summary judgment

Involuntary bankruptcy petitions are governed by § 303 of the Bankruptcy Code.  Section

303(b) sets the numerosity and debt thresholds for petitioning creditors eligible to commence an

involuntary case.[42]  It is a "'gating' provision, intended to place limitations on the commencement

of an involuntary case."[43]  In turn, § 303(h) governs the determination of whether a petitioning cred-

itor who has filed an involuntary bankruptcy petition may obtain an order for relief.  Section

303(h)(1) states that where the petition has been timely controverted, the court shall order relief if

"the debtor is generally not paying such debtor's debts as such debts become due unless such debts

are the subject of a bona fide dispute as to liability or amount."  Section 303(h)(2) requires that

"within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver,

or agent appointed or authorized to take charge of less than substantially all of the property of the

---

[38] *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[39] *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[40] *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)).

[41] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

[42] 11 U.S.C. § 303(b).

[43] *In re Newbury Operating LLC*, No. 20-12976-JLG, 2021 Bankr. LEXIS 773, at *11 (Bankr. S.D.N.Y. 2021) (quoting *In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 594 (Bankr. S.D.N.Y. 2018)).

debtor for the purpose of enforcing a lien against such property, was appointed or took possession."[44] Notably, whether the petitioning creditors have met the requirements to satisfy § 303(b) is an issue separate and apart from the proof requirements under § 303(h).[45]  If the § 303(b) requirements are not timely controverted, they will be deemed waived by the alleged debtor.[46]  For § 303(h), however, once the petition is controverted, petitioning creditors have the burden of demonstrating satisfaction of either § 303(h)(1) or § 303(h)(2) by a preponderance of the evidence whether or not an alleged debtor has controverted.[47]

Here, Alleged Debtor has controverted the Involuntary Petition by arguing that (i) the Claim is subject to a bona fide dispute as to liability and amount; and (ii) the Claim is contingent.[48]  Therefore, in order for Petitioning Creditor to prevail on its Motion for Summary Judgment, Petitioning Creditor must demonstrate an absence of a genuine issue of material fact for these two requirements. Additionally, in order for entry of an order of relief, Petitioning Creditor must demonstrate one of the two requirements under § 303(h).  Together, in this case, the three requirements for entry of summary judgment as to the Involuntary Petition are: (1) that the Claim is not subject to a bona fide dispute as to liability or amount; (2) that the Claim is not contingent; and (3) that one of the two § 303(h) requirements are met.  The Court will discuss each in turn.

**1. Whether Petitioning Creditor's Claim is subject to a bona fide dispute as to liability or amount**

The Fifth Circuit has held courts should determine whether a bona fide dispute exists as to liability or amount using an objective standard that seeks to "determine whether there is an objective

---

[44] 11 U.S.C. § 303(h)(2).
[45] *In re EB Holdings II, Inc.*, 589 B.R. 704, 721 (Bankr. D. Nev. 2017).
[46] *See In re Edwards*, 501 B.R. 666, 684 (Bankr. N.D. Tex. 2013) (noting that "the Bankruptcy Rules expressly contemplate the deemed admission of allegations not specifically denied and the waiver of certain defenses not specifically pleaded when answering an involuntary petition").
[47] 11 U.S.C. § 303(h).
[48] ECF Nos. 25, 37.

basis for either a factual or legal dispute as to the validity of the debt."[49]  In considering this prohi-

bition, "[t]he court's objective is to ascertain whether a dispute that is bona fide exists; the court is

not to actually resolve the dispute."[50]  In other words, the bankruptcy court's job is not to conduct a

thorough trial and determine the proper legal result but simply to determine whether a bona fide

dispute exists.[51]  The petitioning creditor may meet its burden of establishing a prima facie case that

no bona fide dispute exists by submitting evidence of the debtor's default on an obligation.[52]  The

burden then shifts to the debtor to present evidence demonstrating a bona fide dispute does exist.[53]

Neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden.[54]

In the Motion for Summary Judgment, Petitioning Creditor argues that no bona fide dispute

as to liability or amount exists because Alleged Debtor is a "guarantor" of the Note and a "Debtor"

of the payment obligations in the Security Agreement.[55]  Thus, Petitioning Creditor asserts that these

express terms make Alleged Debtor liable under the Security Agreement for the Claim.[56]  Specifi-

cally, Petitioning Creditor notes that Texas law provides for two types of guaranties—a guaranty of

collection, which is conditional, and a guaranty of payment, which is unconditional.[57]  Petitioning

Creditor contends that the Security Agreement constituted a guaranty of payment by Alleged Debtor

on the Note.[58]  Under Texas law, a guaranty agreement is deemed to be a guaranty of payment unless

---

[49] *Sims v. Subway Equip. Leasing Corp. (In re Sims)*, 994 F.2d 210, 221 (5th Cir. 1993).

[50] *Id.* (quoting *In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991)).

[51] *Sims*, 994 F.2d at 221

[52] *Id.*; *see also In re Manolo Blahnik USA, Ltd.*, 619 B.R. 81, 93 (Bankr. S.D.N.Y. 2020) (holding creditor met burden by attaching unpaid invoices evidencing liability and nonpayment).

[53] *Sims*, 994 F.2d at 221.

[54] *See, e.g., In re Byrd*, 357 F.3d 433, 440 (4th Cir. 2004) ("[The debtor] cannot defeat [a creditor's] standing to file under § 303(b)(2) simply by refusing to concede the validity of [its] claim, without presenting evidence to support his factual and legal arguments."); *In re Norris*, 183 B.R. 437, 454 (Bankr. W.D. La. 1995) (holding debtor's "subjective opinion" that judgment against him would be reversed on appeal did not rise to level of bona fide dispute).

[55] ECF No. 35 at 10, ¶ 45.

[56] *Id.* at 10-11, ¶ 45.

[57] *Id.* at 11, ¶ 47; *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 594 S.W.3d 722, 759 (Tex. App.—Houston [14th Dist.] 2019, pet. granted).

[58] ECF No. 35 at 12, ¶ 49.

the agreement specifies otherwise, which means the guarantor is jointly and severally liable on the debt and may be sued under the same terms as the principal obligor.[59]   Furthermore, a guaranty agreement does not require extensive language and terms, and is valid and enforceable if it contains certain essential terms: "(1) the parties involved, (2) a manifestation of intent to guaranty the obligation, and (3) a description of the obligation being guaranteed."[60]

In support of its Motion for Summary Judgment, Petitioning Creditor attaches the Security Agreement[61] and argues that the Security Agreement constitutes an unambiguous agreement by Alleged Debtor to guaranty payment of the Note.[62]   First, Petitioning Creditor notes that Alleged Debtor executed the Security Agreement "individually, as guarantor of the Note," in addition to signing for STI and Garyrent Properties LLC.[63]   Moreover, Petitioning Creditor highlights that, consistent with this language, Alleged Debtor signed the Agreement twice: in his corporate capacity and in his individual capacity.[64]   Thus, to Petitioning Creditor, by executing the Security Agreement in his individual capacity, as the "guarantor" of the Note, Alleged Debtor manifested his intent to guaranty payment of the Note.[65]   To Petitioning Creditor, this would satisfy the second element of the three part test for a guaranty agreement under Texas law.[66]

Petitioning Creditor further argues that the other two elements are also met by citing to the Security Agreement and noting that the Security Agreement lists all parties involved as well as the obligation being guaranteed—i.e., the "Note" executed by STI in favor of Petitioning Creditor.[67] Therefore, Petitioning Creditor maintains that the Security Agreement unambiguously contains all

---

[59] *Jamshed v. McLane Express Inc.*, 449 S.W.3d 871, 879 (Tex. App.—El Paso 2014).

[60] *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 261 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

[61] ECF No. 35-1 at 44-49.

[62] ECF No. 35 at 12, ¶ 49.

[63] ECF No. 35-1 at 44.

[64] *Id.* at 49.

[65] ECF No. 35 at 12, ¶ 51.

[66] *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 261 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

[67] ECF No. 35 at 13, ¶ 52.

essential terms to be an enforceable guaranty agreement.[68]  In the Motion for Summary Judgment, Petitioning Creditor also argues that because the Security Agreement is unambiguous, the Court may not consider any parol evidence of its meaning or the parties' intentions.[69]

Citing portions of the record demonstrating the absence of genuine issue of material fact, Petitioning Creditor has successfully shifted the burden to Alleged Debtor to provide evidence of a genuine issue of material fact regarding whether the Claim is subject to a bona fide dispute as to liability or amount.  Alleged Debtor puts forth two arguments as to why Petitioning Creditor's Claim is subject to a bona fide dispute as to liability: (1) Alleged Debtor withdrew his consent to the Security Agreement before Petitioning Creditor manifested its acceptance of the Security Agreement by returning a signed copy to Alleged Debtor; and (2) in the event the Security Agreement is determined to be enforceable, the terms of the Security Agreement do not impose personal liability upon Alleged Debtor for any part of the Note.[70]  Conversely, Alleged Debtor does not properly contest that the Claim is subject to a bona fide dispute as to amount.  Despite asserting the affirmative defense that the Claim is subject to a bona fide dispute as to amount in its Answer, Alleged Debtor failed to respond or offer any arguments in its Response or at the Hearing.[71]  Thus, the Court will only analyze Alleged Debtor's two arguments as to why the Claim is subject to bona fide dispute as to liability.

### a.   Whether Alleged Debtor withdrew his consent to the Security Agreement

The basis of Alleged Debtor's first argument is that Alleged Debtor made a counteroffer when he sent a signed copy of the Security Agreement back to Petitioning Creditor on June 21, 2017 rather than accepting Petitioning Creditor's offer.[72]  Alleged Debtor's support for this email being a

---

[68] *Id.*
[69] *Id.* at 13, ¶ 53.
[70] ECF No. 37 at 1-2, ¶ 2.
[71] ECF Nos. 25, 37.
[72] ECF No. 37 at 8, ¶ 25.

counteroffer rather than acceptance is that Petitioning Creditor had not previously signed the Security Agreement when Petitioning Creditor sent it to Alleged Debtor.[73]　The acceptance/counteroffer distinction is critical because Alleged Debtor maintains that Petitioning Creditor failed to return a signed copy of the Security Agreement back to Alleged Debtor before Petitioning Creditor revoked the offer on July 13, 2017.[74]　Under Texas law, where there is no delivery of the contract, there is no mutual assent and, hence, no contract.[75]　If the June 21, 2021 communication was a counteroffer and no subsequent delivery occurred, no contract existed and Alleged Debtor was fully able to revoke it. Conversely, if the June 21, 2021 communication was an acceptance rather than a counteroffer, the Security Agreement would not be freely revocable.

As a preliminary matter, Petitioning Creditor objects to Alleged Debtor's first argument as untimely, asserting that it was waived after Alleged Debtor failed to include the argument in his Answer filed on October 12, 2021.[76]　Additional background regarding the Federal Rules of Bankruptcy Procedure is helpful to fully elaborate upon the issue of waiver in the context of a contested involuntary proceeding.　The failure to timely controvert an involuntary petition makes entry of an order for relief mandatory.[77]　Pursuant to Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 1011(b), to controvert an involuntary petition, an alleged debtor can either file an answer or make a motion authorized by Rule 12.[78]　If an alleged debtor chooses to answer the involuntary petition, the answer should be in conformity with Rule 8, and should set forth all of the alleged debtor's affirmative defenses.[79]　Rule 8(b)(1) provides that: "In responding to a pleading, a party must: (A) state in

---

[73] *Id.*

[74] *Id.*

[75] *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (finding that without delivery, there was no mutual assent and thus no binding written contract).

[76] ECF No. 25.

[77] 11 U.S.C. § 303(h).

[78] FED. R. BANKR. P. 1011(b).

[79] FED. R. BANKR. P. 7008; see also FED. R. BANKR. P. 1018 (incorporating Federal Bankruptcy Rule 7008 into contested involuntary proceedings).

short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party."[80]  Averments in the involuntary petition that are not denied are deemed to be admitted.[81]  Accordingly, the Bankruptcy Rules expressly contemplate the deemed admission of allegations not specifically denied and the waiver of certain defenses not specifically pleaded when answering an involuntary petition.

Here, after his Motion to Dismiss was denied, Alleged Debtor filed the Answer on October 12, 2021.[82]  In the Answer, *inter alia*, Alleged Debtor asserted the affirmative defense that the Claim was subject to a bona fide dispute as to liability.[83]  In accordance with Rule 8(b)(1), Alleged Debtor provided a short and plain statement of his defense that the Claim was subject to a bona fide dispute as to liability.[84]  Nowhere in this short and plain statement, however, did Alleged Debtor mention his assertion that "Alleged Debtor withdrew his consent to the Security Agreement before Petitioning Creditor manifested its acceptance of the Security Agreement by returning a signed copy to Alleged Debtor."[85]  Instead, this argument is raised for the first time in his Response,[86] and is thus untimely. Furthermore, the Fifth Circuit has held that a defense is not waived "if (1) the defendant raised the affirmative defense at a pragmatically sufficient time, and (2) the plaintiff was not prejudiced in its ability to respond."[87]  This exception will not apply here though because Alleged Debtor raised this defense after the close of discovery and Petitioning Creditor would be prejudiced in its ability to respond.[88]  Therefore, the Court finds that Alleged Debtor waived his first argument as to why the Claim is subject to a bona fide dispute as to liability.

---

[80] FED. R. CIV. P. 8(b)(1)(A), (B) (emphasis added).
[81] FED. R. BANKR. P. 7008 (incorporating FED. R. CIV. P. 8(b)(6)).
[82] ECF No. 25.
[83] *Id.* at 3, ¶ 16.
[84] *Id.* at 3, ¶ 17.
[85] *See* ECF No. 25.
[86] ECF No. 37 at 1-2, ¶ 2.
[87] *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 (5th Cir. 2017).
[88] ECF No. 31.

However, even if Alleged Debtor had not waived this argument, it still would not have been meritorious.  In the Motion for Summary Judgment, Petitioning Creditor submitted exhibits demonstrating that on June 16, 2017, Alleged Debtor sent an email to Petitioning Creditor which contained a contract draft regarding liability on the Note.[89]  On June 20, 2017, Petitioning Creditor sent Alleged Debtor an email attaching the Security Agreement.  The Security Agreement featured several significant edits to the draft Alleged Debtor had sent Petitioning Creditor on June 16, 2017.  The accompanying June 20, 2017 email stated "Please sign and return the attached security agreement. After receiving the executed agreement I will review 2nd emailed document. Ball's in your court."[90]  The next day, on June 21, 2017, Alleged Debtor sent an email to Petitioning Creditor in which Alleged Debtor attached the Security Agreement, signed by Alleged Debtor.[91]

Alleged Debtor contends that the June 21, 2017 email containing the signed Security agreement was another counteroffer rather than an acceptance because Petitioning Creditor had not signed the Security Agreement when Petitioning Creditor sent it to Alleged Debtor on June 20, 2017. However, as Petitioning Creditor properly argues, Texas law recognizes that a contract need not be signed to be "executed" unless the parties explicitly require signatures as a condition of mutual assent.[92] Since nothing in the Security Agreement required this condition precedent, Petitioning Creditor's failure to sign the Security Agreement when it initially sent it to Alleged Debtor on June 20, 2017 does not defeat its status as an offer.  Further, Alleged Debtor does not contend or provide any evidence that he altered the Security Agreement sent by Petitioning Creditor on June 20, 2017 when he sent the signed copy back on June 21, 2017.  Therefore, even if Alleged Debtor's first argument as

---

[89] ECF No. 35-1 at 34-42.
[90] ECF No. 53-1 at 5-12.
[91] *Id.* at 14-20.
[92] *Mid-Continent Cas. Co. v. Glob. Enercom Mgmt.*, 323 S.W.3d 151, 157 (Tex. 2010).

to why the Claim was subject to a bona fide dispute as to liability was not waived, the argument still fails.

### b. Whether the Security Agreement imposes personal liability on Alleged Debtor

Next, Alleged Debtor's second argument as to why the Claim is subject to a bona fide dispute as to liability is that the terms of the Security Agreement do not impose personal liability upon Alleged Debtor for any part of the Note.[93]  Alleged Debtor argues that the only instance in which he is referred to as a "guarantor" is in the first paragraph of the Security Agreement, which is among the recitals of the Security Agreement.[94]  He then cites to the Texas 8th Court of Appeals which held that "recitals are generally not part of a contract unless the parties intended them to be, and will not control a contract's operative clauses unless those clauses are ambiguous."[95]  Alleged Debtor thus concludes that "the lack of any operative term within the Security Agreement imposing an obligation on the part of [Alleged Debtor] to guaranty any part of the Note would render the Note unambiguously not imposing such an obligation."[96]  In the alternative, Alleged Debtor argues that, in the event the Court determined that the portion of the recital referring to Alleged Debtor as a "guarantor" should be considered because of the ambiguity of the operative terms of the Security Agreement, then the parol evidence submitted by Alleged Debtor demonstrates that the scope was not intended to include Alleged Debtor.[97]

A contract recital is a preliminary statement explaining the background of the transaction or the reasons for entering into the contract.[98]  Recitals generally are not part of a contract unless the

---

[93] ECF No. 37 at 1-2, ¶ 2.
[94] *Id.* at 36.
[95] *All Metals Fabricating, Inc. v. Ramer Concrete, Inc.*, 338 S.W.3d 557, 561 (Tex. App.—El Paso 2009).
[96] ECF No. 37 at 10, ¶ 28.
[97] *Id.* at 10-11, ¶ 29.
[98] *Fleming v. Kirklin Law Firm, P.C.*, No. 14-14-00202-CV, 2015 Tex. App. LEXIS 11767, at *14 (Tex. App.—Houston [14th Dist.] Nov. 17, 2015); *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App.—Dallas 2011, no pet.); *see also McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet.

parties intend them to be.[99]   Parties can show intent to include recitals as part of the contract by clearly incorporating recitals within the operative terms.[100]   While recitals, as a general rule, are not strictly any part of the contract, unless it appears that the parties intended them to be such, they may be looked to in determining the proper construction of the contract or the intention of the parties, at least when the language expressing their contractual relations is ambiguous, uncertain, or indefinite.[101]   So, if the recitals are clear and the operative part is ambiguous, the recitals govern the construction.[102]

Here, the opening line of the Security Agreement states:

**THIS SECURITY AGREEEMENT** (this "**Agreement**"), dated as of this 20th day of June, is made by and between Gary Haymond, individually, as guarantor for the Note described below, and as President of South Texas Innovations, LLC, a Texas limited liability company, and as President of Garyrent Properties, LLC (collectively the "**Debtor**"), with an address at 1617 Peach Leaf St., Houston, Texas and Triple 7 Capital LLC (the "**Secured Party**"), with an address at 9003 Meadow Vista Blvd., Houston, TX 77064-2007.[103]

Throughout the operative terms of the Security Agreement, the term "Debtor" is used frequently but never again defined.[104]   For example, Section 5 of the Security Agreement contains "Debtor's Covenants" but never specifies whether "Debtor" applies to Alleged Debtor individually.[105]   Under Texas law, the court must first attempt to interpret the Security Agreement by looking only at the operative

---

denied) (stating that a recital is a formal statement or setting forth of some matter of fact that explains the reasons behind the contract or writing).

[99] *All Metals Fabricating, Inc.*, 338 S.W.3d at 561.

[100] *Valiant Petroleum, Inc. v. FMC Techs., Inc.*, Nos. 13-11-00673-CV, 13-11-00674-CV, 13-12-00020-CV, 2013 Tex. App. LEXIS 8216, at *18 (Tex. App.—Corpus Christi July 3, 2013) (finding that recitals became part of the contract when an operative term stated "The recitals set out in this SETTLEMENT AGREEMENT constitute part of the SETTLEMENT AGREEMENT").

[101] *Gardner v. Smith*, 168 S.W.2d 278, 280 (Tex. Civ. App.—Beaumont 1942).

[102] *Id.*

[103] ECF No. 35-1 at 44.

[104] *Id.* at 44-49.

[105] *Id.* at 45-46.

terms.[106]  Since the opening recital defining "Debtor" will not be considered part of the contract, the use of "Debtor" in the operative terms is thus rendered ambiguous.

Having made this finding, the Court may use the clear recital to interpret the construction of the Security Agreement.  However, finding that the operative terms of the Security Agreement are ambiguous has an additional effect.  Under the parol evidence rule, "only where a contract is ambiguous may a court consider the parties' interpretation and 'admit extraneous evidence to determine the true meaning of the instrument.'"[107]  Therefore, having found that the operative terms of the Security Agreement are ambiguous, Alleged Debtor's parol evidence arguments must also be considered.

For evidence that the parties did not intend to include personal liability in the Security Agreement, Alleged Debtor cites to Petitioning Creditor's own exhibit featuring email communication between the parties on June 8, 2017, several weeks before the Security Agreement was signed by Petitioning Creditor.[108]  In this email, *inter alia*, Petitioning Creditor states:

> "No more discussion or negotiation, this is my final and last offer, you give me an option to buy your real estate company, with the Plains State Bank loan in place for $1.00. In 90 days a minimum payment of $400,00.00 is due without borrowing against the Peachleaf property. If you do make the minimum payment, my option extends for another 180 days for you to repay me in full, including all interest and other charges . . . ."[109]

On June 9, 2017, Alleged Debtor responded to this email by accepting[110] and the parties further agreed to have lawyers draft up the contract.[111]

Alleged Debtor contends that the absence of any discussion as to a personal guaranty in Petitioning Creditor's "final and last offer" creates a material dispute as to whether the parties intended

---

[106] *All Metals Fabricating, Inc.*, 338 S.W.3d at 561.
[107] *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018).
[108] *Id.*
[109] ECF No. 35-1 at 32.
[110] *Id.* at 31.
[111] *Id.*

to include this provision in the Security Agreement.[112]  In other words, Alleged Debtor asserts that the personal guaranty was a material term that the parties would have discussed in the "final and last offer" if they intended to include it in the Security Agreement.  The Court finds that the evidence offered by Alleged Debtor creates at least a genuine dispute about whether the operative terms of the Security Agreement were intended to include a personal guaranty by Alleged Debtor.  The burden now shifts back to Petitioning Creditor to counter this assertion.

In its Reply, Petitioning Creditor first contends that Alleged Debtor's argument is the same one the Court already rejected in Alleged Debtor's Motion to Dismiss.[113]  With emphasis, the Court notes that it did not make a conclusive legal finding as to whether a bona fide dispute existed when it denied Alleged Debtor's Motion to Dismiss but merely held that Alleged Debtor had not carried his burden at that stage.  Unlike the previous Motion to Dismiss, Alleged Debtor has cited to binding Texas appellate case law regarding the interpretation of recitals in contracts.  This case law estab- lishes that "recitals are generally not part of a contract" and "will not control a contract's operative clauses unless those clauses are ambiguous."[114]

Next, Petitioning Creditor incorrectly argues that the Court should not consider the June 8, 2017 email as parol evidence because the Security Agreement in unambiguous.[115]  As the Court has already explained, without considering the recital, the meaning of "Debtor" in operative terms of the Security Agreement is ambiguous.  Thus, both recitals and extrinsic evidence may be considered for the purpose of determining whether the parties intended to create a personal guaranty on behalf of Alleged Debtor.  Having failed to demonstrate that Alleged Debtor's evidence does not create a bona fide dispute, Petitioning Creditor has not met its summary judgment burden.

---

[112] ECF No. 37 at 10-11.
[113] ECF No. 53 at 10, ¶ 25.
[114] *All Metals Fabricating, Inc.*, 338 S.W.3d at 561.
[115] ECF No. 53 at 10, ¶ 28.

Accordingly, the Motion for Summary Judgment will be denied as to whether the Claim is subject to a bona fide dispute as to liability or amount. [116]

### 2.  Whether Petitioning Creditor's Claim is contingent

In the Motion for Summary Judgment, Petitioning Creditor argues that the Claim is not contingent because the Security Agreement does not provide for any condition precedent to Alleged Debtor's liability for the indebtedness owed under the Note.[117]  In support, Petitioning Creditor cites to the Security Agreement and argues that it clearly represents an unconditional guaranty agreement.[118]

Under the Bankruptcy Code, a claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[119]  The Fifth Circuit has stated that a contingent claim is one where liability of "the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a  future event and such future occurrence was within the actual or presumed contemplation of the parties at the time the original relationship of the parties was created."[120]  The *In re All Media Properties, Inc.* court stated that "just because a claim is unliquidated, disputed or unmatured apparently does not mean it is contingent" and that "[o]nly holders of claims that are contingent as to liability are denied the right to be petitioning creditors."[121]

---

[116] As the Court has noted above, Alleged Debtor failed to offer any arguments as to how the Claim is subject to a bona fide dispute as to amount.  However, since the requirement that a claim not be subject to a bona fide dispute as to liability or amount is a single element, albeit with two parts, the Court will not grant or deny summary judgment as to only part of an element. Thus, summary judgment will be denied as to both liability and amount. *See In re HL Builders, LLC*, No. 19-32825, 2020 Bankr. LEXIS 439, at *27 (Bankr. S.D. Tex. 2020) (analyzing whether a bona fide dispute exists as to liability or amount as a single element).

[117] ECF No. 35 at 15, ¶ 59.

[118] ECF No. 35-1 at 44-49.

[119] 11 U.S.C. § 101(5)(A).

[120] *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 220 (5th Cir. 1993); *see also In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980).

[121] *In re All Media Properties, Inc.*, 5 B.R. at 133.

In his Answer, Alleged Debtor asserts the affirmative defense that Petitioning Creditor lacks standing because the Claim is contingent.[122]  However, Alleged Debtor fails to provide a short and plain statement of this affirmative defense.[123]  Furthermore, in the Response, Alleged Debtor never denies or argues against Petitioning Creditor's contention that the Claim is not contingent.[124]  At the Hearing, Alleged Debtor again failed to offer any evidence or argument as to why the Claim is contingent.[125]  Finally, as the *In re All Media Properties, Inc.* court stated, the fact that the Claim is disputed does not render it contingent.[126]

Accordingly, Petitioning Creditor has satisfied its summary judgment burden in demonstrating that the Claim is not contingent as to liability.

### 3.   Whether an order for relief should be entered

Satisfaction of the § 303(b) requirements is a prerequisite for entry of an order for relief.[127] As detailed above, a genuine dispute exists as to whether the Claim is subject to a bona fide dispute as to liability or amount under § 303(b)(1).  However, even if summary judgment had been granted as to that element, Petitioning Creditor did not meet its burden in demonstrating that an order for relief should be entered.

In order for entry of an order of relief, Petitioning Creditor must demonstrate that either § 303(h)(1) or § 303(h)(2) are met.  Unlike § 303(b), the petitioning creditor must demonstrate these requirements regardless of whether an alleged debtor has controverted the petition.[128]  Section 303(h)(1) requires that "the debtor is generally not paying such debtor's debts as such debts become

---

[122] ECF No. 25 at 3, ¶ 15.
[123] *Id.*
[124] *See* ECF No. 37.
[125] ECF No. 58.
[126] *In re All Media Properties, Inc.*, 5 B.R. at 133.
[127] 11 U.S.C. § 303(b).
[128] 11 U.S.C. § 303(h).

due unless such debts are the subject of a bona fide dispute as to liability or amount."[129]   Section 303(h)(2) requires that "within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession."[130]

In the Motion for Summary Judgment, Petitioning Creditor failed to argue or provide any evidence that Alleged Debtor is generally not paying his debts as they becomes due.[131]   Based on several footnotes,  Petitioning Creditor adopted the false belief that Alleged Debtor waived this argument by not controverting it in his Answer.[132]   As stated above, unlike § 303(b), the requirements of § 303(h) are not waived when an alleged debtor fails to controvert.[133]   Furthermore, Petitioning Creditor also failed to argue or provide any evidence that within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.  Having failed to put forth any evidence of either of the § 303(h) requirements, Petitioning Creditor did not meet its summary judgment burden as to whether an order for relief can be entered.

Accordingly, the Motion for Summary Judgment will be denied as to whether an order of relief can be entered is denied

## IV.   CONCLUSION

Triple 7 Capital, LLC's Motion for Summary Judgment and accompanying supplement will

---

[129] 11 U.S.C. § 303(h)(1).
[130] 11 U.S.C. § 303(h)(2).
[131] ECF No. 35.
[132] *See* ECF No. 35 at 8, n. 5; 9, n. 10.
[133] 11 U.S.C. § 303(h).

be denied in part and granted in part.  The Motion for Summary Judgment and accompanying sup-plement will be denied as to whether Triple 7 Capital, LLC's claim is the subject of a bona fide dispute as to liability or amount, and as to whether one of the two requirements of § 303(h) are met. The Motion for Summary Judgment and accompanying supplement will be granted as to whether Triple 7 Capital, LLC's claim is contingent.  A separate scheduling order will be entered where the only issues remaining for trial are: (1) whether Triple 7 Capital, LLC's claim is the subject of a bona fide dispute as to liability or amount; and (2) whether an order for relief should be entered pursuant to § 303(h).

An order consistent with this Memorandum Opinion will be entered on the docket simulta-neously herewith.


SIGNED March 24, 2022


Eduardo Rodriguez
United States Bankruptcy Judge